United States Bankruptcy Court Southern - Texas
ENTERED
04/13/2016

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE | |
| THEODORE M. HERRING, JR. and CARMEN W. DAWSON, | CASE NO. 13-32914-H3-7 |
| Debtors, | |
| JOSEPH M. HILL, TRUSTEE, | |
| Plaintiff, | |
| v. | ADV. NO. 14-3170 |
| THEODORE M. HERRING, JR.,, CARMEN W. DAWSON, AND LAVERNE WILLIAMS, | |
| Defendants. | |

MEMORANDUM OPINION

The court has held a trial of the above captioned adversary proceeding. In the instant adversary proceeding, the Chapter 7 Trustee seeks a determination as to the ownership of real property located at Lots 24 and 26 in the Heron Lakes Estates residential subdivision in Harris County, Texas (the "Property") and, to the extent defendant Laverne Williams holds title, seeks avoidance of the conveyance to Williams, and recovery of the Property, under Section 544 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Trustee also seeks an award of attorney fees pursuant to TUFTA. The following are the Findings of Fact and Conclusions of Law of

the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Theodore M. Herring, Jr. ("Herring") and Carmen W. Dawson ("Dawson") collectively referred to as "Debtors," filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code on May 9, 2013. Joseph M. Hill ("Trustee") is the Chapter 7 Trustee.

Laverne Williams is Dawson's mother. (Tr. 1/19/2016, at p. 50).[1] Williams was 77 years old at the time of trial of the instant adversary proceeding. (Tr. 1/19/2016, at p. 74).

On July 2, 2002, the Theodore M. Herring Jr. CCC Family Limited Partnership (the "FLP CCC") owned, inter alia, the Property. (Defendants' Exhibit 5).

Herring and Dawson married on July 6, 2002. (Defendants' Exhibit 6).

On March 26, 2004, Herring, as general partner of the FLP CCC, executed a transfer of the Property to himself, individually. The March 26, 2004 deed was recorded in the real

[1] References in this Memorandum Opinion to "Defendants" include Debtors and Williams.

property records of Harris County, Texas on March 26, 2004. (Plaintiff's Exhibit 31).

On August 18, 2005, Herring executed a General Warranty Deed With Vendor's Lien (the "Deed With Vendor's Lien"). The Deed With Vendor's Lien was recorded in the real property records of Harris County, Texas on August 30, 2005. The Deed With Vendor's Lien provides in pertinent part:

> That THEODORE M. HERRING, JR., of Harris County, Texas, for and in consideration of the sum of TEN AND NO/100 DOLLARS and other valuable consideration to the undersigned paid by LAVERNE WILLIAMS of Dallas County, Texas, grantee, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery of that one certain promissory note of even date herewith, in the principal sum of two hundred and forty thousand dollars ($240,000), payable to the order of THEODORE M. HERRING, JR., in monthly installments and bearing interest as therein provided.
>
> The payment of which note is secured by the Vendor's lien herein retained, and has GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY unto LAVERNE WILLIAMS of the County of Dallas and the State of Texas, all of the following described real property in Harris County, Texas, to-wit:
>
> LOTS TWENTY-FOUR (24), AND TWENTY-SIX (26), IN BLOCK ONE (1), OF HERON LAKES ESTATES SECTION I, A SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED AMONG THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF HARRIS COUNTY, TEXAS UNDER FILM CODE NO. 438002, AND CLERK'S FILE NO. U239862.

(Plaintiff's Exhibit 1).

There is contradictory evidence regarding whether the Deed With Vendor's Lien was delivered to Williams. Williams stipulated, in the joint pretrial statement in the instant

adversary proceeding, that she previously testified in deposition that she had never seen, and never accepted, the Deed With Vendor's Lien. (Docket No. 66, at p. 5). At the trial of the instant adversary proceeding, Williams testified that, until January, 2014, she had never seen the Deed With Vendor's Lien. (Tr. 1/19/2016, at p. 58). However, she testified that she made a mistake in her deposition testimony, because she has seen the Deed With Vendor's Lien many times. (Tr. 1/19/2016, at p. 61). She testified that the Deed With Vendor's Lien was hand delivered to her in Dallas, Texas by her daughter "a long time ago." (Tr. 1/19/2016, at p. 69-70).

Williams testified that she did not meet with her counsel (who also represented Debtors in the instant adversary proceeding) prior to her deposition. (Tr. 1/19/2016, at p. 72). She testified that she did meet with her counsel prior to trial on the instant adversary proceeding. (Tr. 1/19/2016, at p. 76-77). The court finds that Williams' self-serving trial testimony on the question of whether the Deed With Vendor's Lien was delivered to her was not credible.

Dawson testified that she delivered the Deed With Vendor's Lien to Williams. She testified that she does not know the date on which she delivered the deed. (Tr. 1/19/2016, at p. 95). Dawson testified that she has the original Deed With Vendor's Lien stored somewhere at her home. (Tr. 1/19/2016, at

p. 101-102). As addressed in more detail below, the court finds that Dawson's testimony that she delivered the Deed With Vendor's Lien to Williams was not credible.

Prior to the filing of the petition in the instant case, Debtors were defendants in litigation brought by Heron Lakes Estates Owners Association, Inc. (the "HOA"), in state court. After obtaining judgment against Debtors, the HOA propounded post-judgment discovery to Debtors. Debtors submitted verified responses to interrogatories. In the interrogatories, Debtors were asked the address of Williams, and whether she was related to or employed by either of the Debtors. Debtors responded that they did not know Williams' address, and did not have any relationship with Williams. (Plaintiff's Exhibit 2).

Dawson testified that she did not answer the interrogatory truthfully. (Tr. 1/19/2016, at p. 83). She testified that she knew Williams was her mother, and knew Williams' address at the time. (Tr. 1/19/2016, at p. 85). She testified that false information was given because she did not want the HOA to have her mother's information. (Tr. 1/19/2016, at p. 116).

Debtors presented a questionnaire to the Chapter 7 Trustee in connection with the meeting of creditors. The printed name of both Debtors appears on the questionnaire. Both Herring (Tr. 1/22/2016, at p. 7) and Dawson (Tr. 1/19/2016, at p. 88)

acknowledged that they presented the questionnaire to the Trustee. The court takes judicial notice that the docket sheet in the instant Chapter 7 case reflects that Debtors appeared at the meeting of creditors on June 18, 2013.

In the questionnaire, the Trustee asked the Debtors: "Have you, within the last 10 years, owned any interest in real estate anywhere that is NOT listed in your schedules?" Debtors checked the box marked "No." (Plaintiff's Exhibit 12).

This sworn statement is false. The documents filed of record in the real property records of Harris County, Texas, reflect that Herring owned an interest in the Property between March 26, 2004 and August 30, 2005, dates which are within 10 years before the May 9, 2013 date of filing of the petition in the instant Chapter 7 case.[2]

Herring testified that he submitted answers to interrogatories to his counsel, and then signed the interrogatories, but did not verify their accuracy. He testified that Debtors' attorney put the statement that Debtors did not have any relationship with Williams into the response without his having reviewed it. (Tr. 1/20/2016, at p. 38).

Dawson testified that she is a trustee of a trust (the "Rose Garden Trust") established by Williams. (Tr. 1/19/2016, at

[2]As further addressed below, Dawson also owned an interest in the property.

p. 85). Williams testified that she established the Rose Garden Trust for purposes of estate planning. (Tr. 1/19/2016, at p. 70). Williams testified that there are no beneficiaries of the Rose Garden Trust. (Tr. 1/19/2016, at p. 65). Dawson also testified that there are no beneficiaries of the Rose Garden Trust. (Tr. 1/19/2016, at p. 85).

Williams conveyed two parcels of real property, both located in Dallas County, Texas, to the Rose Garden Trust on September 28, 2012. Both conveyances list the address of the Rose Garden Trust in Houston, Texas.[3] (Trustee's Exhibits 15, 16). Williams testified that she lives in Dallas, Texas.

In the questionnaire, the Trustee asked the Debtors: "Have you ever been the trustee, beneficiary or settlor of a trust?" Debtors checked the box marked "No." (Trustee's Exhibit 12).

In light of these three instances in which Dawson swore to facts that were false, in order to further her own goals, the court finds her testimony generally not credible. The court finds that the most credible evidence regarding delivery of the Deed With Vendor's Lien is Williams' deposition testimony that she had never seen, and never accepted, the Deed With Vendor's Lien.

---

[3]The address listed for the Rose Garden Trust is the same address listed for the Debtors in their Chapter 7 petition. It is a different address from Debtors' home address.

Notwithstanding that the Deed With Vendor's Lien identifies the transfer from Herring to Williams as a sale, with Herring retaining a lien, both Herring and Dawson testified that the conveyance of the Property to Williams was intended as a gift. The court finds this self-serving testimony not credible.

Williams testified that she never agreed to pay $240,000 to Herring or Dawson for the Property. She testified that she never signed a note in the amount of $240,000, payable to Herring. (Tr. 1/19/2016, at p. 56-57). She testified that she has not paid any consideration to Herring for transfer of the Property. (Tr. 1/19/2016, at p. 66).

Williams testified that she never signed an escrow agreement regarding the Property. She testified that she has never paid property taxes on the Property. (Tr. 1/19/2016, at p. 62-63).

Williams testified that Lots 24 and 26 are on each side of Lot 25. She testified that Lot 25 is Debtors' home. (Tr. 1/19/2016, at p. 67). She testified that the Property is vacant, and she has not made any improvements to the Property. (Tr. 1/19/2016, at p. 62-63).

Williams testified that Dawson hired a real estate agent to try to sell the Property. Williams testified that she does not know the name of the real estate agent, and has never signed a contract with the real estate agent. (Tr. 1/19/2016, at

p. 63-64).

Debtors' schedules identify debts owed to IRS, in the amounts of $61,670.85, for 2002 income taxes, $49,377.56 for 2003 income taxes, $90,197.99 for 2004 income taxes, and $66,474.37 for 2005 income taxes. None of the taxes are listed as disputed. Portions of the IRS debts are listed as unsecured. (Trustee's Exhibits 3, 5).[4]

Trustee testified that he first learned of the transfer of the Property at the creditors' meeting on June 18, 2013. (Tr. 1/19/2016, at p. 29).

Conclusions of Law

Community property consists of the property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code § 3.002. Property possessed by either spouse during marriage is presumed to be community property. Tex. Fam. Code § 3.003. The transfer of the Property from the FLP CCC to Herring occurred after Herring and Dawson were married. The court concludes that Herring and Dawson acquired the Property on March 26, 2004 as community property.

A conveyance of real property must be in writing, signed by the grantor, and delivered to the grantee. Tex. Prop. Code § 5.021. The question of delivery of a deed is determined

[4]The court takes judicial notice that IRS has filed a proof of claim in the instant Chapter 7 case, in the aggregate amount of $684,502.02.

by examining all the facts and circumstances preceding, attending and following the execution of the instrument. Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661 (1917). Where a grantor retains possession of the deed, and does not deliver the deed, the transfer is not complete. Driskill v. Forbes, 566 S.W.2d 90 (Tex. App.--Eastland 1978, writ ref'd n.r.e.).

In the instant case, the credible evidence indicates that the Deed With Vendor's Lien was not delivered to Williams. The court concludes that the Deed With Vendor's Lien was not effective to transfer title to the Property to Williams. The court concludes that title to the Property remained in Debtors on the petition date. The court concludes that the Property is property of the bankruptcy estate.

In the alternative, if the Deed With Vendor's Lien had been sufficient to transfer title to Williams, it would have transferred only Herring's interest in the property. An alienation of real property that purports to transfer a greater right or estate in the property than the person making the alienation may lawfully transfer alienates only the right or estate that the person may convey. Tex. Prop. Code § 5.002(a).[5]

[5]The court notes that, had the transfer been of homestead property, it would have been wholly ineffective, for failure of Dawson to join in the transfer. See Tex. Fam. Code § 5.001.

To the extent the Deed With Vendor's Lien transferred[6] an interest in the Property to Williams, the transfer is subject to analysis under Section 544 of the Bankruptcy Code and TUFTA.

Tex. Bus. & Comm. Code § 24.005 provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[6]Although the court has concluded that no transfer took place, the court's analysis under TUFTA presumes that a transfer did take place.

> (b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
>
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Comm. Code § 24.005.

The term "insider" within the meaning of TUFTA is defined to include a relative of the debtor. Tex. Bus. & Comm. Code § 24.002(7)(A)(i). Williams is Dawson's mother and Herring's mother in law. The court concludes that Williams is an insider. The court concludes that the transfer of the Property was to an insider.

The Property occupies vacant lots on either side of Debtors' homestead. Although there is no evidence as to whether Debtors actively used the Property, the fact that the Property

consists of vacant lots adjacent to Debtors' home in a residential subdivision suggests that they retained control of the Property.

Debtors did not receive any consideration for transfer of the property. Williams' testimony indicates that she did not agree to pay $240,000 to Debtors, and did not execute a note payable to Debtors in the amount of $240,000.

There is not conclusive evidence as to whether Debtors were insolvent or became insolvent. However, there were substantial debts owed to IRS which remained unpaid on the date of the transfer, and some of which remain unpaid 14 years after they were incurred.

The court also infers intent to defraud from Debtors' concealment of their relationship to Williams in discovery responses within the HOA litigation, and in the false statements in the questionnaire. The court concludes that the Deed With Vendor's Lien was executed with intent to defraud creditors.

Under Tex. Bus. & Comm. Code § 24.013, in a proceeding brought under TUFTA, the court may award such costs and reasonable attorney fees as are equitable and just. Tex. Bus. & Comm. Code § 24.013. In the instant case, the court has determined that the Property remained property of the bankruptcy estate on the petition date, and thus does not reach the questions of whether to avoid the transfer pursuant to TUFTA and

whether to award attorney fees.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on April 13, 2016.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE